UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MYRA RICHARDSON and
ROBERT RICHARDSON,

    Plaintiffs,

v.

                                  Case No. 2:13-cv-10234-GAD-MAR
                                  HON. GERSHWIN A. DRAIN

WELLS FARGO BANK, N.A., AS
TRUSTEE FOR OPTION ONE
MORTGAGE LOAN TRUST 2007-FXD1
ASSET BACKED CERTIFICATES
SERIES 2007-FXD1,

    Defendant.

_____/

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [#11] AND CANCELLING HEARING

**I.    INTRODUCTION**

On or about December 8, 2012 Myra and Robert Richardson ("Plaintiffs") filed a complaint against Wells Fargo Bank, N.A. ("Defendant") in Oakland County Circuit Court alleging Illegal Foreclosure By Advertisement, Lack of Capacity/Ownership/Privity, Breach of MICH. COMP. LAWS § 600.3205, and to quiet title to a property commonly known as 5828 Oak Hill Road, in Ortonville, Michigan. On January 18, 2013 this matter was removed to this Court from the Oakland County Circuit Court. Presently before the court is Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. This matter has been fully briefed and the Court finds that oral argument will not aid in the resolution of this matter. Accordingly, the Court will resolve Defendant's pending motion on the briefs submitted. *See*

E.D. MICH. L.R. 71(f)(2). For the reasons stated below, the Court GRANTS Defendant's Motion to Dismiss.

## II.     FACTUAL BACKGROUND

The issues in this case arise from a dispute involving real property located at 5828 Oak Hill Rd., Ortonville, MI 48462-8912 (the "Property"). Between 1988 and 1993, Plaintiffs purchased 11 acres of land from Block Brothers (a.k.a. the Lake Development of Michigan). The 11 acres of land consist of one 8 acre parcel (Parcel D) and one 3 acre parcel (Parcel C); both tracts of land were, and continue to be, connected via a 66 foot wide easement that runs *across* the 3 acre tract. Plaintiffs assert that they hold title to both tracts of land and the easement. The Property in dispute is located on the 8 acre tract of land; this tract of land, along with the other 3 acre tract adjoined by the easement, was owned by the Plaintiffs before the home in question was built.

On September 11, 2006, the Plaintiffs granted a mortgage to Coastal Capital Corporation on the Property in the amount of $358,800.00; the mortgage was recorded on September 29, 2006 with the Oakland County Records Office. The mortgage describes both parcels C and D in the property description, but parcel D, along with the easement, is the land associated with the mortgage. *See* Pl.'s Resp. Def.'s Mot. Dismiss and for Sanctions, Ex. 4 at 15. On February 25, 2009 the mortgage loan was assigned to Option One Mortgage Corporation; this assignment was recorded on May 30, 2008 in Liber 40345, Page 305. *See* Pl.'s Resp. Def.'s Mot. Dismiss and for Sanctions, Ex. 5 at 17-18. The mortgage loan was assigned to the Defendant on or around February 26, 2009 by American Home Mortgage, successor in interest to Option One Mortgage, with recording of the assignment occurring on March 13, 2009 in Liber 40974, Page 450, Oakland County Records. *See* Pl.'s Resp. Def.'s Mot. Dismiss and for Sanctions, Ex. 6 at 20-21.

Years after the creation of the mortgage, Plaintiffs defaulted and the Defendant initiated foreclosure by advertisement proceedings against them. The last payment made by the Plaintiffs occurred on November 1, 2008; Plaintiffs allegedly have not made mortgage payments in at least 4 years. Plaintiffs claim that they attempted to initiate a loan modification process, but were unsuccessful because the Defendant failed to abide by the statutory foreclosure and loan modification process.[1] On February 26, 2009 Plaintiffs were provided with a notice specifying that the total debt due and owing on the mortgage loan had been accelerated. On March 6, 2009 an Affidavit of Posting was placed on the Plaintiffs' door informing the Plaintiffs of the same. The foreclosure sale was published in the Oakland Press on February 27, March 6, March 20, and March 23, 2009; during that time the debt was still not reinstated. Subsequently the property was sold to the Defendant at a Sheriff's Sale on March 2, 2010. The Sheriff's Deed On Mortgage Foreclosure form described the foreclosed property as including the 8 acres on which the physical house sits (Parcel D) as well as the 66 foot wide easement. (*See* Pl.'s Resp. Def.'s Mot. Dismiss and for Sanctions, Ex. 7 at 24-25) The 3 acre parcel of land is not noted on the Sheriff's Deed.[2] In addition to not redeeming the home before the expiration of the redemption period on March 2, 2011, the Plaintiffs did not attempt to convert the Foreclosure by Advertisement into a Judicial Foreclosure.

---

[1] According to paragraphs 32-34 of the Verified Complaint, Plaintiffs allege that Defendant failed to complete the loan modification process and failed to send a denial letter with the calculations of the loan modification after Plaintiffs were denied a modification. Plaintiffs also assert that they attempted in good faith to continue with the loan modification process, but to no avail. Defendant notes in its brief that the statute cited by the Plaintiffs was inapplicable to their situation given that the event occurred before the statute's enactment (this argument is addressed below).

[2] Plaintiff's Exhibit 3, a depiction of the disputed property, shows that the 3 acre parcel of land is not needed in order to access the street. This means that Plaintiffs' allegations of land lock appear to be meritless. *See* Pl.'s Resp. Def.'s Mot. Dismiss and for Sanctions, Ex. 3 at 6.

After the expiration of the redemption period, on March 10, 2011, Plaintiffs filed a claim in the Oakland County Circuit Court against the Defendant; the Complaint was subsequently dismissed for failure to prosecute. On July 27, 2011 Defendant was successful in securing a Judgment of Possession in its favor from the 52-2 District Court. Plaintiffs filed a post-judgment motion in the District Court and filed an appeal in Oakland County Circuit Court; the District Court affirmed its judgment on September 19, 2011, and the Circuit Court dismissed the first Claim of Appeal on September 4, 2012. After the Claim of Appeal was dismissed the Defendant requested an Order of Eviction from the 52-2 District Court. The Judgment of Possession in favor of the Defendant was reaffirmed and, on February 14, 2013, an Order of Eviction against the Plaintiffs was issued. Though the Plaintiffs filed a Claim of Appeal, their Claim was dismissed and they were evicted.³

### III.   LAW & ANALYSIS

#### A.   Standard of Review

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court is empowered to assess whether or not the plaintiff has sufficiently stated a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). In order for a pleader's complaint to be sufficient he or she must present "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The factual allegations in the complaint must be adequate enough for the court to draw a

---

³ Ten vehicles located on the 3 acre tract of land—which Plaintiffs assert has no relation to any debt located on the 8 acre tract—were removed and placed in a tow yard. Plaintiffs have paid $1,800.00 to get 3 of them back the owner of the tow yard has threatened to sell the other 7 vehicles. Plaintiffs also assert that other personal property on the land was confiscated. These factual allegations are absent from the complaint; As such, the Court will not consider these facts in resolving the present motion.

4

reasonable "inference" that the defendant is liable for the alleged misconduct. *Id.* at 556. A pleader's complaint must contain more than a mere statement raising the "suspicion" of a legally recognized harm. *Id.* at 555. Even if doubtful in fact, the factual allegations in the complaint must be above a speculative level; a judge's disbelief of the pled factual allegations should not result in dismissal. *Id.* at 556. The court's determination of whether or not the complaint states a claim upon which relief can be granted is dependent on specific context and judicial experience. *Ashcroft v. Iqbal*, 556 U.S. 662, 669 (2009).

When assessing whether or not to grant a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court is to assume that the factual allegations are true; legal conclusions—even when presented as factual allegations—are not entitled to the assumption of truth. *Id.* Broad assertions that lack factual underpinnings are not sufficient to establish a cause of action. *Id.* at 679. Additionally, though a plaintiff only needs to plead factual allegations showing that entitlement to relief is plausible, alleging conduct that is "merely consistent with defendant's liability" is not enough to establish a legitimate claim. *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557).

### B.     Defendant's Motion to Dismiss

#### i.   Res Judicata

Here, the Court finds that the Plaintiffs claims are barred by res judicata because they were already decided—or should have been decided—in Michigan's District Court. In Michigan, res judicata prevents re-litigation of matters that involve the same parties and necessary facts. *Sewell v. Clean Cut Mgmt. Inc.*, 463 Mich. 569, 575, 621 N.W.2d 222, 225 (2001). Here, res judicata takes a broad approach; "claims actually litigated in a prior action and those claims

arising out of the same transaction" are barred. *Schwartz v. City of Flint*, 187 Mich.App. 191, 194, 466 N.W.2d 356, 359 (1991). In determining whether two claims arise out of the same transaction, the court must ascertain whether the same facts, or evidence are essential to both claims; if so, the two claims are said to have come out of the same transaction. *Id.* at 194-95; *see also Adair v. State*, 470 Mich. 105, 124-25, 680 N.W.2d 386, 398 (2004) (holding that claims that are within the same transaction are barred by res judicata notwithstanding any alternative substantive claims, different forms of relief, or differences in evidence flowing from those facts). Moreover, transactions come from facts that "are related in *time, space, origin or motivation*" as well as facts forming a "convenient trial unit." *Adair*, 470 Mich. at 125.

In order to establish that res judicata bars a litigant's claims, a party must show that: (1) "the first action was decided on the merits, (2) the matter contested in the second action was or could have been resolved in the first, and (3) both actions involve the same parties or their privies." *Sewell*, 463 Mich. at 475 (quoting *Dart v. Dart*, 460 Mich. 573, 586, 597 N.W.2d 82 (1999)). In a summary proceeding, a judgment for possession "entitles the plaintiff to possession of the premises and sets the amount due under the contact, which the defendant must pay." *J.A.M. Corp. v. AARO Disposal, Inc.*, 461 Mich. 161, 170, 600 N.W.2d 617, 621 (1990). Though the law creates an exception to the rule of res judicata in the context of a summary proceeding, this exception only applies to "*other* claims of relief;" it does not apply to claims that were already litigated. *Sewell*, 463 Mich. at 576 (emphasis added; quotation omitted).

In *J.A.M. Corp.*, the plaintiff entered into a sublease with the defendant and, after a period of five years, the defendant stopped sending payments; plaintiffs sought possession through a summary proceeding. *J.A.M. Corp.*, 461 Mich. at 163. The District Court found that the sublease was null and void from the beginning. *Id.* at 165. Subsequently, the plaintiffs filed a

complaint in Michigan Circuit Court alleging, *inter alia*, breach of an implied contract and unjust enrichment. *Id.* at 166. Both the Circuit Court and the Court of Appeals held that both the breach of contract and unjust enrichment claims flowed from the initial decision in District Court, and dismissed the case as barred by res judicata. *Id.* at 166. Citing language found in MICH. COMP. LAWS § 600.5750, and other summary proceedings statutes, the Michigan Supreme Court reversed on the grounds that a party is not compelled to join other claims in a forfeiture action. *Id.* at 168-69. [4]

Here, Plaintiffs maintain that res judicata does not bar the current action because the ownership of the land was not a matter decided by the 52-2 District Court. Essentially, the Plaintiffs' argument is that finding title to the *land* does not involve the same facts as finding title to the *property*. Plaintiffs allege that the action did not come from a transaction from facts related in "time, space, or motivation" and did not form a "convenient trial unit."

There is no merit to Plaintiffs' contentions. First, it is true that Plaintiffs initially held title to the whole 11 acres of land, however the Sheriff's Deed clearly shows the foreclosed property's mortgage included the 8 acre parcel of land and the 66-foot wide easement. If this were not enough, Plaintiffs even acknowledge that the property includes the 8 acre parcel of land and the easement in their Oakland County Circuit Court verified complaint. (*See* Notice of Hr'g, Ex. A at 5). Second, Plaintiffs acknowledge that they did not redeem the property during the

---

[4] In their brief, Plaintiffs cite *Mercantile Bank Mortgage Company, LLC v. Kamminga*, No. 307563 (Mich. Ct. App., Sept. 20, 2012) and proffer the position that since it has not been settled who owns the 8 acre tract of land on which the property in question sits, the claim as to who owns the property should be settled in the process of deciding who owns the land. *Mercantile Bank* is distinguishable because there was no attempt by the plaintiff in that case to re-litigate an issue already decided by the court. Additionally, the evidence shows that Plaintiffs have no right to the 8 acre property or the easement associated with it due to multiple rulings in state court.

7

statutory redemption period and acknowledge in their brief that their failure to redeem the property vested in Defendant all rights to it.

Plaintiffs assert that they should be able to re-litigate the issue of who holds title to the property because they allegedly hold title to the land on which the property sits. This is contradicted by the Sheriff's Sale and Plaintiffs' own verified complaint, however even if it was not true Plaintiffs still would not be able to re-litigate the issue of who has title to the property. Assuming *arguendo* that the land claims have merit, this case would be similar to *J.A.M. Corp.* in that the action here would center on an issue that was not decided or even raised in the District Court. Just as with the claims that had yet to be litigated in *J.A.M. Corp.*, the plain language of the statute would not prevent the Plaintiffs from raising their other claims, notwithstanding Defendant's victory on the merits in 52-2 District Court.[5] Given this, Plaintiffs would theoretically be able to assert claims involving land that were not related to the foreclosure. Plaintiffs' situation, however, is distinguishable from *J.A.M. Corp.*, because the claims Plaintiffs are trying to litigate here are the same claims that they litigated in state court; this would mean that they, by definition, are not "other claims."

In addition to asserting their right to bring an action to find the rightful owner of the *land*, Plaintiffs take the additional step and proffer that they should effectively be able to re-litigate the 52-2 District Court's decision to quiet title to the *property* in Defendant's name. Plaintiffs reason that the court should do this because the two issues have to be decided together in light of the property's location on what is allegedly Plaintiffs' land. Plaintiffs offer no case law to support

---

[5] The exception to res judicata is applicable to summary proceedings because the legislature did not want the rapidity of the process to compel attorneys to "fasten all other pending claims to the swiftly moving summary proceedings." *Sewell v. Clean Cut Mgmt., Inc.*, 463 Mich. at 574 (quoting *J.A.M. Corp.*, 461 Mich. at 168-68).

this position. [6] It is admitted by Plaintiffs that the decision to quiet title of the property in the name of the Defendant was decided on the merits. Further, Plaintiffs cannot deny that the issue to quiet title to the property could have been resolved in the initial action in the District Court because that was the actual purpose of the action in the District Court. Finally, it is readily apparent that the action to quiet title to the property in District Court involves the same parties in this case. These three facts establish that the action to quiet title to the property should be barred by the doctrine of res judicata. Though title to the property was quieted in Defendant's name during summary proceedings, Plaintiffs' attempt to re-litigate the issue would not constitute an "other" claim under the *Sewell* interpretation of the statute. Even if it were not settled who owned the land on which the property sits, the plaintiff likely could not re-litigate who held title to the property. Given this, *J.A.M. Corp.* is not applicable here, because—per *Iqbal*--Plaintiffs' assertions are not entitled to the assumption of truth when they are clearly contradicted by the record. [7]

Thus the doctrine of res judicata bars Plaintiffs from re-litigating who holds title to the house. The District Court decided the issue as to who owns the property on the merits, Plaintiffs' present claims could have been raised in the summary proceedings because they related directly to the foreclosure proceedings, and both actions involve the same parties. Plaintiffs' claims are therefore dismissed.

---

[6] It is notable that Plaintiffs use the issue surrounding who holds title to the 11 acres of land—the 3 acre parcel, the connecting 66 foot easement *across* the 3 acre parcel, and the 8 acre parcel on which the home sits on—to reintroduce the quiet title action concerning the property. The record clearly shows that all 8 acres of the land associated with the property, along with the 66 foot wide easement across the 3 acre parcel, were part of the Sheriff's Deed.

[7] Though Plaintiffs assert that they did not have to redeem the property because of alleged fraud and irregularities in the passing of title, they have put forth no evidence showing that Defendant gained title through fraud; the alleged irregularities are discussed below.

### ii. Lack of Standing

Even if the court determined that res judicata was inapplicable to the Plaintiffs' claims, Plaintiffs lack standing to bring this quiet title action because the expiration of the redemption period terminated any and all interest Plaintiffs had in the subject property. Under Michigan law, an individual "may bring an action . . . against any other person who claims or might claim any interest inconsistent" with his or her claim of interest in land. MICH. COMP. LAWS § 600.2932(1). Mortgagees may initiate actions to quiet title when "title to the mortgaged premises has become absolute." MICH. COMP. LAWS § 600.2932(2). In the event a mortgagor defaults on his or her loan a mortgagee can use foreclosure by advertisement to gain possession of the premises. MICH. COMP. LAWS § 600.3201 *et seq.* Once the mortgagee has initiated a foreclosure process via advertisement, the mortgagee must follow all of the relevant statutory law guiding that process. *Senters v. Ottawa Sav. Bank FSB*, 443 Mich. 45, 50, 503 N.W.2d 639, 641 (1993).

In order to initiate foreclosure by advertisement the following must be true: (1) the power to sell the property has become "operative" due to a default on the mortgage, (2) there has not been an "action or proceeding" initiated to recover "any part of the mortgage," (3) the mortgage that empowers the mortgagee to sell it is "properly recorded," and (4) the foreclosing party is "either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage." MICH. COMP. LAWS § 600.3204(a)-(d). A mortgagee that is not the original owner of the mortgage must produce a chain of title showing that the mortgagee is the true owner of the mortgage. MICH. COMP. LAWS § 600.3204(3).

After the foreclosure by advertisement process has finished, the mortgagor has a set statutory period of redemption to regain the property. MICH. COMP. LAWS § 600.3240(8)-(13).

The mortgagor can redeem the property at any time during the statutory period if he or she pays the "bid price plus interest, and any amount for taxes and insurance that the purchaser has properly filed with the register of deeds." *Senters*, 443 Mich. at 50; *see also* MICH. COMP. LAWS § 600.3240(1)-(2). If the mortgagor does not redeem the mortgage within the set statutory period, the deed resulting from the foreclosure by advertisement "shall vest in the grantee . . . all the right, title, and interest which the mortgagor had at the time of the execution of the mortgage." MICH. COMP. LAWS § 600.3236; *see also id.* Where "fraud, accident or mistake" are absent, the mere "possibility of injustice" is insufficient to usurp the clearly defined statutory law regarding redemption. *Freeman v. Wozniak*, 241 Mich.App. 633, 638, 617 N.W.2d 46, 48-49 (2000).

Plaintiffs assert that a flaw in the chain of title entitles them to challenge the Defendant's interest. The Defendant has established that the Foreclosure by Advertisement process commenced on February 27, 2009 when it began publishing notices in the local paper and on March 6, 2009 when a notice of foreclosure sale was posted on the Plaintiffs' door. *See* Def.'s Mot. Dismiss and for Sanctions, Ex. E at 4. The Defendant has also established—and the Plaintiffs agree—that the Plaintiffs defaulted on their mortgage. Further, once the Foreclosure by Advertisement process began, the Defendant did not initiate other judicial proceedings. Also, the mortgage between the Plaintiffs and the original mortgagee was recorded. Finally, after the issuance of the Sheriff's Deed, Plaintiffs failed to redeem the property. Defendant has produced evidence—and Plaintiffs do not disagree—that one full year passed and the Plaintiffs failed to pay off the amount of debt owed. Given this, the Defendants—from the perspective of the Plaintiffs—complied with most of the Foreclosure by Advertisement statute. Plaintiffs claim title on the grounds that the Defendant's right to foreclose was barred due to an irregularity affecting

11

the chain of title and Defendant's failure to follow Michigan's loan modification statutory law. These claims are erroneous for the reasons stated below.

### iii. Assignment Dispute and Loan Modification Allegations

Unless otherwise banned, Michigan law allows assignment of rights. *Talton v. BAC Home Loans Servicing LP*, 839 F.Supp.2d 896, 904 (E.D. Mich. 2012). Federal courts interpreting Michigan law have reaffirmed that once assignments are made, the assignee occupies the same position as the assignor and has the same rights and is privy to the defenses." *See id.* at 905. A mortgagor cannot challenge an assignment absent "a *clear* showing of fraud, or irregularity." *Overton v. Mortgage Electronic Registration Systems*, No. 284950, 2009 WL 1507342, *1 (Mich. App. 2009) (emphasis added).

Michigan law has only carved out a select number of instances in which a mortgagor may challenge an assignment because of irregularity. *See Talton*, 839 F.Supp. 2d at 906. A mortgagor may challenge an assignment when the mortgagor must protect himself from double billing. *See Livonia Properties Holdings, LLC v. 12840-12976 Farmington Road Holdings, LLC*, 399 Fed.App'x 97 (6th Cir. 2010) (holding that mortgagor could not challenge the assignment because the mortgagee held the original note, and the mortgagor was not at risk of double billing).

Moreover, "any defect in [a] written assignment of [a] mortgage would make no difference where both parties to the assignment ratified the assignment by their subsequent conduct in honoring its terms." *Bernard v. Federal Nat. Mortg. Ass'n*, No. 12-14680, slip op. 1, 6 (E.D. Mich. March 27, 2013) (quoting *Yuille v. Am. Home Mortg. Servs., Inc.*, 483 Fed.App'x 132, 135 (6th Cir. 2012)); *see also Talton*, 839 F.Supp. 2d at 907-08 (acknowledging that though

12

a mortgagor "may assert as a defense any matter which renders [an] assignment *absolutely invalid or ineffective, or void*"—as in cases of forgery—such assertions are "irrelevant" where the assignor has the ability to foreclose the property and assigns that interest to the assignee). Moreover, mortgagors have no standing to challenge terms of an assignment when allegations hinge on the irregularities concerning the trust dealing with the assignment. *See Livonia*, 399 Fed.App'x at 100-02.

Here, the original mortgage was held by Coastal Capital, however paragraph 12 of the mortgage contract [8] permitted Coastal Capital to assign its rights or interest in the property. The record shows that Coastal Capital assigned its rights to Option One—later American Home Mortgage—and that entity subsequently assigned its interest in the property to the Defendant. Though the Plaintiffs allege fraud in the latter assignment, they offer no facts to support such an assertion. As aforementioned, the mortgage contract states that the terms in the agreement apply to the original mortgagee as well as any assignees; the contract also provides for the right to accelerate the debt. Also, the Defendant has shown evidence that its assigned rights were memorialized in the public record on March 13, 2009 in Liber 40974, Page 450. Plaintiffs do not dispute this. Given this, Plaintiffs have not shown any *clear* evidence that they have standing to challenge the assignment because of fraud.

Plaintiffs further claim that irregularities in the trust containing the assigned mortgage precludes Defendant's power to foreclose. To support this, Plaintiffs cite *Talton* for the proposition that a mortgagor who is not party to an assignment may still change the assignment. Plaintiffs reason that they should be able to challenge the assignment because the status of the trust makes it "invalid." This interpretation of *Talton* is overly broad. Though there are instances

---

[8] *See* Def.'s Mot. Dismiss and for Sanctions, Ex. A at 5.

in which a mortgagor can attack an assignment, those circumstances do not manifest themselves here. First, during the Foreclosure by Advertisement process, the Plaintiffs were never at risk of any type of double billing. Coastal Capital was the original holder of the note and the subsequent assignments were properly recorded and are not in dispute. Second, the court in *Livonia Properties* did not go so far as to hold that an irregularity in the status of the trust at the time of the assignment renders the assignment void, and *Talton* acknowledges that challenges to the assignment are irrelevant where the assignor has the ability to foreclose and assigns that interest. This means that any supposed irregularity in the status of the trust did not impact the Defendant's ability to initiate foreclosure proceedings. Moreover, American Home Mortgage ratified the assignment between itself and the Defendant with its subsequent conduct. Finally, and most important, the Defendant's interest in the property was actually recorded, and any irregularities in the chain of title were settled by the assignment being in the public record. Given this, the Defendant had all the rights of the original mortgagee, including the right to foreclose and the Plaintiffs lack standing to bring a claim challenging the assignment.

### iv. Loan Modification Argument

Plaintiffs' claim of an invalid foreclosure due to the Defendant's failure to abide by the loan modification scheme in MICH. COMP. LAWS § 600.3205(c) lacks merit. As Defendant correctly states in its brief, MICH. COMP. LAWS § 600.3205(c) took effect after the notice was provided to Plaintiffs that their home was to go into foreclosure. *See* Def.'s Mot. Dismiss and for Sanctions, at 20. The language in the statute reads as follows, "Subsection (4) (containing the loan modification requirements) applies only to proceedings under this chapter in which the first notice under section 3208 is published after July 5, 2009 and before June 30, 2013." MICH. COMP. LAWS § 600.3204(5). "Notice" entails advertising the foreclosed property "for 4

14

successive weeks at least once in each week, in a newspaper published in the county where the premises included in the mortgage and intended to be sold, or some part of them, are situated." MICH. COMP. LAWS § 600.2308.

Here, the Defendant has provided evidence that it initiated the foreclosure proceedings before the statute took effect. On March 6, 2009, the Defendant posted a notice on what was then the Plaintiffs' address giving them notice that foreclosure proceedings were imminent unless they took action to fulfill their financial obligations. Moreover, as required by the statute, the Defendant published the foreclosed property in a newspaper located in the county in which the premises were located for four successive weeks: February 27, March 6, March 20, and March 23, 2009. All of this was completed before MICH. COMP. LAWS § 600.3205(c) became effective. Given this, Plaintiffs' allegations concerning the loan modification process do not state a claim and this claim is also subject to dismissal on this basis.

### v. 28 U.S.C. § 1927

Notwithstanding the weakness of Plaintiffs' claims, sanctions are not warranted under the circumstances. Counsel may be liable where he or she has brought about excessive cost or unnecessarily increased the amount of litigation associated with a court case. *See* 28 U.S.C. § 1927. Though attorneys are to be zealous advocates for their clients, such zeal is not excused when an attorney knowingly engages in "dilatory," "unreasonable," and vexatious tactics. *Jones v. Continental Corp.*, 789 F.2d 1225, 1230 (6th Cir. 1986). Parties who unnecessarily burden the court and opposing counsel with unreasonable and superfluous litigation may be required by the court to pay the excess cost associated with the excess litigation. *See* 28 U.S.C. § 1927. Sanctions under 28 U.S.C. § 1927 are designed to punish parties who use "dilatory tactics" that

go beyond the confines of vigorous advocacy. *Garner v. Cuyahoga County Juvenile Court*, 554 F.3d 624, 644 (6th Cir. 2009). When assessing whether or not sanctions are warranted the court looks for "a showing of something less than subjective bad faith, but something more than negligence or incompetence." *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 647 (6th Cir. 2006). Accordingly, sanctions under the statute do not require that the party be consciously aware of his or her prohibited conduct. *Rentz v. Dynasty Apparel Industries, Inc.*, 556 F.3d 389, 396 (6th Cir. 2009). Despite this, sanctions will only be applied when judges "applying the collective wisdom of their experience" find that a party's conduct "falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party." *Ridder v. City of Springfield*, 109 F.3d 288, 298 (6th Cir. 1997).

Defendant suggests that sanctions should be imposed because Plaintiffs' filings have been "vexatious" and have come out of a desire to "preach" and "intimidate." The standard under the statute is clear. Notwithstanding their odds of victory, the Plaintiffs were entitled to have an advocate who would try his best to keep them in their home. Though it is unnecessary for the court to find that the Plaintiffs' counsel acted in bad faith, it is unlikely that their counsel's conduct rose to the level of egregiousness contemplated by the statute. Put simply, Plaintiffs may have been an annoyance to the Defendant, but their right to file an appeal should not have been foreclosed upon by fears of sanctions. Plaintiffs' pleadings may be creative, but they do not rise to the level of being vexatious tactics designed to harm the Defendant. Accordingly, the Court declines to impose sanctions against Plaintiffs' counsel under 28 U.S.C. § 1927.

### vi. Rule 11 Sanctions

When filing claims and motions in Federal Court, parties are admonished not to file frivolously, and not to file in an effort to cause delay. *See* Fed. R. Civ. P. 11(b)(1)-(2). Under Rule 11 the filing party is obliged to "conduct a reasonable inquiry to determine that the document is well grounded in fact . . . conduct a reasonable inquiry to determine that the positions taken are warranted by existing law" and ensure that the document is not filed for an "improper purpose." *Jackson v. Law Firm of O'Hara, Ruberg, Osborne and Taylor*, 875 F.2d 1223, 1229 (6th Cir. 1989). In order to find whether the party has fulfilled his or her obligations under Rule 11 the court uses an "objective standard of reasonableness," and evaluates the situation under the given circumstances. *Id.* While Rule 11(c) gives the offending party an opportunity to respond to the sanction—safe harbor—the court can issue a show cause order; such situations are usually limited to those in which a contempt order is warranted. Fed. R. Civ. P. 11 (1993 Advisory Notes, Subsections (b) and (c)). [9] In imposing monetary sanctions, the court should limit itself to pursuing a course of action designed to "deter" the party from engaging in the prohibited conduct in the future. *Tropf v. Fidelity Nat. Title Ins. Co.*, 289 F. 3d 929, 940 (6th Cir. 2002).

In addition to monetary cases, Rule 11 also allows for non-monetary sanctions. *Id.* Because Rule 11 allows the district court broad discretion in determining sanctions, the court is permitted to use injunctive sanctions in the interest of justice. *Id.* The use of injunctive sanctions should be limited to situations in which the court needs to prevent repetitive prohibited conduct. *Id.* Parties who are sanctioned with injunctions usually are tied to conduct that shows a blatant

---

[9] The Defendant appears to have not waited for the "safe harbor" time to pass. It has instead requested the Court to issue a show cause order.

17

disregard for the judicial system and the opposing party. *See Ortman v. Thomas*, 99 F.3d 807 (6th Cir. 1996) (holding that injunctive relief was proper where a Plaintiff sued a myriad of parties—including multiple judges—in federal court after he lost several cases in state court); *see also Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264 (6th Cir. 1998) (holding that after decades of repetitive litigation by counsel for the decedent's estate, injunctive relief was proper to prevent the full development of future frivolous litigation).

The Plaintiffs' history of litigation is long, but does not rise to the level of being worthy of sanctions. First, unlike in other cases where sanctions were warranted, the facts in this case show that the Plaintiffs prolonged the litigation process by filing multiple appeals. Though the Defendant suggests that the Plaintiffs' "litigious history" was precipitated by malice, it is more likely that it was the result of a desperation to keep what they viewed as their property. Viewed objectively—and taking into account the circumstances surrounding the situation—it is arguable that the Plaintiffs' actions were reasonable given the circumstances; albeit overzealous. Though the Court is obliged to sanction parties who disregard res judicata and file frivolously to cause delay, such instances are limited to those in which the court is attempting to deter future conduct. Given that the Plaintiffs' actions were largely driven by the appeals process, sanctions will likely not be needed to prevent them from continuing their quest to win title to the property. Simply put, justice would be better served if the Plaintiffs were not sanctioned.

The Defendant also argues that the Plaintiffs' long history of litigation—in addition to monetary sanctions—warrants an injunctive sanction to prevent further litigation. While the Plaintiffs have pursued multiple appeals in order to keep their home, their conduct does not rise to the level of being worthy of injunctive sanctions. For one, most of Plaintiffs' litigation was grounded in the appeals process. Though their apparent chances of victory in each case were

slim, it is unfair to hold their zealous attempts to stay in their home against them. Furthermore, this situation likely does not rise to the level of being worthy of injunctive relief, because the alleged prohibited conduct is not on par with other instances in which the court has issued injunctions. Finally, while the Plaintiffs' case may have been unlikely to succeed from its inception, it does not rise to the level of blatantly disregarding the judicial system and opposing counsel. For this reason, the request for injunctive relief is denied.

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS the Defendant's Motion to Dismiss [#15]. This cause of action is dismissed.

SO ORDERED.

Dated: July 22, 2013   /*s*/Gershwin A Drain  
GERSHWIN A. DRAIN  
UNITED STATES DISTRICT JUDGE